594 F.Supp. 758 (1984)
RAILWAY LABOR EXECUTIVES' ASSOCIATION, Plaintiff,
v.
GRAND TRUNK WESTERN RAILROAD COMPANY, Norfolk and Western Railway Company and Delaware and Hudson Railway Company, Defendants.
Civ. A. No. 82-12.
Special Court, Regional Rail Reorganization Act.
August 8, 1984.
*759 Clinton J. Miller, III, Highsaw & Mahoney, P.C., Washington, D.C., for plaintiff Railway Labor Executives' Association.
James S. Whitehead, Sidley & Austin, Chicago, Ill., for defendant Norfolk and Western R. Co.
Kinga M. LaChapelle, Delaware and Hudson Railway Company, Albany, N.Y., for defendant Delaware and Hudson Ry. Co.
Mary P. Sclawy, Grand Trunk Western Railroad Company, Detroit, Mich., for defendant Grand Trunk Western R. Co.
Before GASCH, Presiding Judge, and BRYANT and WEINER, Judges.

MEMORANDUM
GASCH, Presiding Judge.
This dispute arises from Section 1144(a)(1) of the Northeast Rail Service Act of 1981 ("NRSA"), 45 U.S.C. § 1101 et seq., which repeals Title V of the Regional Rail Reorganization Act of 1973 ("RRR Act"), as amended, 45 U.S.C. § 701 et seq. The plaintiff seeks to enjoin the defendants from discontinuing protections provided for under Title V, which were incorporated by reference in contracts between the plaintiff's members and the defendants. Defendants assert that, as a matter of Congressional intent and of contract law, the defendants are no longer required to provide these protections.

BACKGROUND
Section 508(a)(1) of the RRR Act required that agreements between acquiring railroads and their employees include the protection and benefits specified in Section 505 of the RRR Act. Section 505 set the amount and duration of monthly displacement allowances for employees deprived of employment or income and provided for *760 separation and termination allowances and moving expense benefits. Under Section 509 of the RRR Act, the United States would reimburse the acquiring railroads for the cost of providing these protections.
The agreements entered into between the plaintiff's members and the defendants incorporated the Title V protections as required by Section 508. The agreements also expressly stated that
[w]henever the term Regional Rail Reorganization Act of 1973 appears in the agreement, such phrase shall be construed to mean the "Regional Rail Reorganization Act of 1973 as amended or as subsequently amended."
It is the contention of the defendants that, because of this proviso in the contract, the repeal of Title V by Congress effectively eliminated the protections of Title V from the private agreements at issue here as well.
Upon the repeal of Title V, the defendants stopped providing Title V benefits, and the plaintiff responded by filing this suit. The plaintiff argues that the defendants' refusal amounts to a unilateral change in the contracts between the plaintiff's members and the defendants. The plaintiff asserts that this unilateral change is in violation of the Railway Labor Act, 45 U.S.C. § 156. The plaintiff seeks a declaration that repeal of Title V did not absolve the acquiring railroads of their duty to provide Title V benefits. It also asks the Court to enjoin the defendants from further violating the Railway Labor Act.

DISCUSSION
This case presents two questions. One is whether the repeal of Title V amounted to a congressional abrogation of those private contract rights set forth in Title V and incorporated by reference in the contracts between the parties to this suit. The other is whether, as a matter of contract law, the contracts should be construed to contain the terms of Title V, despite the repeal of Title V by Congress. The Court answers the former in the negative. The Court does not address the latter question because, as the parties have agreed, that issue should be submitted for arbitration.
In the complaint, the plaintiff seeks a declaration that Section 1144 of NRSA, 45 U.S.C. § 771 note, repealing Title V of the RRR Act, does not affect the agreements between plaintiff's members and defendants. To the extent the plaintiff raises the issue of whether the repeal by Congress of Title V was intended to abrogate the contracts between the defendants and the plaintiff's members, the case is properly before the court. See 45 U.S.C. § 1105(a)(1).
As originally enacted, Title V of the RRR Act protected employees of the railroads in reorganization from the potentially harmful effects on job security the reorganization might otherwise have caused. For purposes of Title V, "protected employees" included employees of acquiring or selling railroads and of Conrail if the employee had been employed by a selling railroad immediately prior to Conrail's acquisition of the seller's property, in addition to two additional special classes of employees. Pub.L. 93-236, Title V, § 501, 87 Stat. 1012. In Section 1144(a)(1) of NRSA, Congress repealed Title V of the RRR Act in its entirety. 45 U.S.C. § 771 note. Congress provided a new scheme of benefits for Conrail employees in the form of a new Title VII to the RRR Act. 45 U.S.C. § 797 et seq. It did not provide for any replacement benefits for employees of acquiring railroads.
Last January, the Court reviewed the effects of NRSA Section 1144's repeal of Title V on protective agreements between Conrail and Conrail employees. As to the Conrail employees, the Court found that Section 1144's repeal of Title V did amount to a Congressional abrogation of the private contracts between Conrail and its employees. Railway Labor Executives' Association v. United States, 575 F.Supp. 1554 (Regional Rail Reorg.Ct.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1596, 80 L.Ed.2d 127 (1984). Crucial to the decision was the determination that the new protections provided by NRSA, see 45 U.S.C. § 797 et seq., *761 were inconsistent with the Title V provisions that had been incorporated in the contracts. NRSA therefore was found to supersede the inconsistent provisions. Id. at 1559. That case was unlike this, in that the employees in the instant suit, as employees of private carriers, do not fall within the protection of Title VII.
Because no new protections were enacted for the employees of the private carriers, there is no statutory provision with which the private contracts could be found to be inconsistent. This failure to provide for alternative benefits, by contrast with Congress' provision of new benefits for Conrail employees, suggests that it was not intended to override any private contract provisions.
To construe NRSA Section 1144 to repeal not only Title V but also all private contract provisions incorporating Title V would be to find in Congress an intent to leave this class of employees without protection. Logic and legislative history reveal no reason why this category of employees, out of all those who had been protected under Title V, should now be purposefully left without protection. In fact, the lack of any replacement provision for employees of other carriers lends itself to the conclusion that Congress expected that the private agreements incorporating Title V protections would remain effective.
Likewise, although the legislative history of NRSA reveals a Congressional intent to make the new Title VII benefits the exclusive protection for Conrail employees, it does not suggest that Congress intended its repeal of Title V to override private contractual protections of employees of private carriers. The legislative history of NRSA does establish that the concern in repealing Title V was the cost of providing Title V benefits to Conrail employees. See 127 Cong.Rec. S 9060 (daily ed. July 31, 1981). Title VII was, therefore, to be the exclusive protection for Conrail employees. It cannot be inferred from the legislative history on Title VII, the whole thrust of which was the need to limit the amount Conrail was costing the taxpayers, that Congress intended to replace the contractual protections of employees of private carriers with absolutely no protections at all.
The lack of provision for any alternate benefits for employees of private carriers, along with the concern expressed in the legislative history for Conrail's financial situation without reference to the situations of private carriers, leads to the conclusion that NRSA Section 1144 is not a Congressional abrogation of the private contracts between these parties. The Court's resolution of this question does no more than establish that Section 1144 of NRSA does not, as a matter of statutory interpretation, dissolve the plaintiff's Title V rights. There remains the question of whether the plaintiff's members retain the right to Title V benefits under the terms of their contracts. This issue is one of contract construction, not of statutory interpretation. Because the plaintiff's claim concerns the interpretation, application or enforcement of the collective bargaining agreements entered into pursuant to Section 508, it should be submitted for resolution to the National Railroad Adjustment Board. As the plaintiff has stated in the Memorandum in support of its motion for summary judgment, upon this Court's agreement that Section 1144 of NRSA did not in itself override any private contract provisions, any question of whether, as a matter of contract law, the terms of Title V remain viable portions of the contracts may be submitted for final and binding arbitration as provided in Section 3, Second, of the Railway Labor Act, 45 U.S.C. § 153, Second. See also Agreement Between Norfolk and Western Railway Company and Brotherhood of Railroad Signalmen, Article IV (December 9, 1975); Agreement Between Grand Trunk Western Railroad Company and United Transportation Union, Article V (December 6, 1975).

CONCLUSION
The Court enters judgment for the plaintiff declaring that the repeal of Title V does not constitute a Congressional abrogation of the private contract rights to Title V *762 benefits created by the agreements between the parties to this suit. The issue of whether, as a matter of contract law, the protections remain a viable part of the contracts, surviving the repeal of Title V, should be submitted for arbitration. Accordingly, no judgment is entered on the latter issue.

ORDER
Upon consideration of the parties' cross-motions for summary judgment, the oral arguments of counsel in open Court, and for the reasons set forth in the accompanying memorandum, it is by the Court this 30th day of July, 1984,
ORDERED that declaratory judgment be, and hereby is, entered that Section 1144(a)(1) of the Northeast Rail Service Act did not of its own terms abrogate the provisions of private contracts between the plaintiff's members and the defendants, which provisions incorporate the protections of Title V of the Rail Reorganization Act of 1973.