cess duties paid together with interest as provided by law.

**CONSOLIDATED RAIL CORPORATION, Plaintiff,**

v.

**Christopher J. MULLIGAN, Defendant.**

**Civ. A. No. 83-15.**

Special Court, Regional Rail Reorganization Act.

June 24, 1985.

---

John A. Fraser, Harry A. Rissetto, Morgan, Lewis & Bockius, Washington, D.C., Dennis Alan Arouca, David S. Fortney, Philadelphia, Pa., for plaintiff Consol. Rail Corp.

Robert L. Ferris, New York City, for defendant Christopher J. Mulligan.

Before GASCH, Presiding Judge, and BRYANT and WEINER, Judges.

GASCH, Presiding Judge:

This matter is before the Court on the motion of plaintiff Consolidated Rail Corporation ("Conrail") for summary judgment. Conrail has filed this action for declaratory and injunctive relief aimed at barring defendant Christopher J. Mulligan [1] from pursuing certain arbitration proceedings he initiated in an effort to receive benefits pursuant to Title V of the Regional Rail Reorganization Act of 1973 ("RRRA").[2] The Court heard oral argument on plaintiff's motion on May 14, 1985. For the reasons stated below, Conrail's motion is granted.

---

1. Mr. Mulligan is apparently a present or former employee of Conrail. *See* Complaint, Exhibit 10.

2. Pub.L. 93-236 §§ 501-09, 87 Stat. 985, 1012-20 (Jan. 2, 1974).

## BACKGROUND

On March 29, 1982,[3] counsel for Mr. Mulligan filed a "notice of intention to conduct an arbitration" with the National Mediation Board. The notice provided in pertinent part:

Please take notice that pursuant to the Regional Rail Reorganization Act of 1973, which provides in part for arbitration of disputes under the aforementioned Act and pursuant to 9 U.S. Code and Section 7503(c) of the Civil Practice Law and Rules and other applicable laws, the undersigned attorney for the Petitioner will proceed to a hearing of a certain dispute between the parties as set forth in the statement hereto attached before an arbitrator designated by the National Mediation Board.

Complaint ¶ 4, Exhibit 1; Defendant's Opposition at 2. Conrail was identified as one of the respondents on the notice. A "statement of dispute" attached to the notice listed the following as the subject matter of the arbitration:

Violation of [Section] 505 of the Regional Rail Reorganization Act of 1973 with respect to the Petitioner.[4]

Section 505[5] was enacted as part of Title V of the Regional Rail Reorganization Act and provided for monthly displacement allowances to any employee of Conrail's predecessor railroads who was deprived of employment by the reorganization. Section 505 also gave transferred employees a number of protections and provided for separation allowances to employees who voluntarily resigned. *See Railway Labor Executives' Association v. United States,* 575 F.Supp. 1554, 1555 n. 4 (Sp.Ct.R.R.R.A. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1596, 80 L.Ed.2d 127 (1984). However, Section 505 was expressly repealed by Section 1144 of the Northeast Rail Service Act ("NRSA").[6]

## DISCUSSION

Plaintiff in this action seeks an order declaring that the Special Court has exclusive jurisdiction over the subject matter of Mr. Mulligan's claim for Title V benefits and enjoining Mr. Mulligan from taking

---

3. The complaint alleges that the notice was filed on or about April 2, 1982. Complaint ¶ 4. Mr. Mulligan asserts that the notice was actually filed on March 29, 1982. Opposition to Motion of Consolidated Rail Corporation for Summary Judgment ("Defendant's Opposition") at 2. As discussed *infra,* regardless of whether the notice was filed on March 29, or April 2, 1982, it is time-barred. Thus any dispute on this point does not present a material issue of fact.

4. The arbitration has never been held. On June 2, 1982, counsel for Mr. Mulligan asked the National Mediation Board ("the NMB") to supply a panel of possible arbitrators. Complaint, Exhibit 2. On June 7, 1982, the NMB did so, noting that its action did "not indicate any determination with respect to the merits of the parties with respect to this request." Complaint, Exhibits 2 and 3. On September 21, 1982, counsel for Mr. Mulligan purported to select Richard R. Kasher, Esq. as arbitrator. Complaint, Exhibit 11. On November 5, 1982, Mr. Kasher notified the parties that after considering Conrail's objections, he was "withdraw[ing] as the proposed neutral in this matter." Complaint, Exhibit 15.

On July 16, 1983, counsel for Mr. Mulligan asked Judge Earle Warrin Zaidins to serve as arbitrator in this matter. Complaint, Exhibit 21. Conrail registered its objections to the arbitration with Judge Zaidins. Complaint, Exhibit 22. On September 12, 1983, Judge Zaidins agreed to Conrail's request for a continuance of the arbitration. Complaint, Exhibit 24.

Conrail has consistently registered its objection to the arbitration Mr. Mulligan seeks. *See, e.g.,* Complaint, Exhibit 6 (June 22, 1982 letter from Conrail to counsel for Mr. Mulligan objecting to Mr. Mulligan's failure to follow procedure for Title V claim); Exhibit 14 (October 28, 1982 letter from Conrail to proposed arbitrator detailing Conrail's objections to arbitration); Exhibit 20 (May 20, 1983 letter from Conrail to counsel for Mr. Mulligan denying claim as barred by repeal of Title V); Exhibit 22 (July 29, 1983 letter from Conrail to proposed arbitrator objecting to arbitrability of claim).

5. 45 U.S.C. § 775 (1976).

6. Pub.L. No. 97–35, § 1144, 95 Stat. 669 (Aug. 13, 1981).

Section 1144(a)(1) stated that: "Title V of the Regional Rail Reorganization Act of 1973 (45 U.S.C. § 771 et seq.), and the items in the table of contents of such Act relating to Title V, are repealed."

Section 1144(a)(2) contained a limited exception to this repeal for claims filed within a statutory grace period. As discussed *infra,* Mr. Mulligan cannot rely on this exception.

any further action in pursuit of that claim through the arbitration process discussed *supra*.

### A. *Jurisdiction*

Section 1152(a)(1) of NRSA, 45 U.S.C. § 1105 (1982), vests this Court with "exclusive jurisdiction" over any civil action:

> for injunctive, declaratory, or other relief relating to the enforcement, operation, execution, or interpretation of any provision of or amendment made by [NRSA].

As noted above, Section 1144 of NRSA repealed Section 505 of the RRRA. Thus this action by Conrail is a civil action for injunctive and declaratory relief relating to the interpretation of NRSA.[7]

This Court held in *Consolidated Rail Corporation v. County of Monroe*, 558 F.Supp. 1387, 1390 (Sp.Ct.R.R.R.A.), *cert. denied*, 462 U.S. 1120, 103 S.Ct. 3089, 77 L.Ed.2d 1350 (1983), that its jurisdiction does not extend to issues which only "tangentially touch the provisions of NRSA." Because the failure to exercise jurisdiction

in this matter would subject Conrail to liability for claims that the Congress declared, in enacting NRSA, represent an obstacle to the establishment of improved rail service and a threat to Conrail's prospects of maintaining profitable service,[8] it is clear that this matter "significantly affect[s] implementation of [NRSA]." *Id.* Thus this Court has exclusive jurisdiction over this action.

### B. *Timeliness of Defendant Mulligan's Title V Claim*

In repealing Section 505, Congress provided a limited ninety day grace period for the filing of Title V claims before they would be forever barred.[9] This ninety-day period began to run on September 1, 1981.[10]

It is undisputed that Mr. Mulligan did not file a claim for Section 505 benefits prior to March 29, 1982.[11] Even assuming that Mr. Mulligan filed his notice of intent to compel arbitration no later than that date [12] and that this represented the proper procedure to make a Section 505 claim,[13]

---

7. *See Railway Labor Executives' Association v. Grand Trunk Western R.R. Co.*, 594 F.Supp. 758 (Sp.Ct.R.R.R.A.1984); *Railway Labor Executives' Association v. United States, supra.*

8. Section 1132 of NRSA contains the following findings and declarations:

> (4) the provisions for protection of employees of bankrupt railroads contained in the Regional Rail Reorganization Act of 1973 have resulted in the payment of benefits far in excess of levels anticipated at the time of enactment, have imposed an excessive fiscal burden on the Federal taxpayer, and are now an obstacle to the establishment of improved rail service and continued rail employment in the Northeast region of the United States; and
> (5) [ ] holding Conrail liable for employee protection payments would destroy its prospects of becoming a profitable carrier and further injure its employees....

45 U.S.C. § 1101 (1982).

9. The second and third paragraphs of subsection (a) of Section 1144 contain the following limited exception to the repeal of Title V contained in the first paragraph of that subsection:

> (2) Notwithstanding the repeal made by paragraph (1) of this subsection—
> (A) benefits accrued as of the effective date of this subsection as a result of events that occurred wholly prior to October 1, 1981,

shall be disbursed except as provided in paragraph (3); and
> (B) any dispute or controversy regarding such benefits shall be determined under the terms of the law in effect on the date the claim arose.
> (3) Benefits shall not be disbursed under paragraph (2)(A) unless the employee has filed a claim for such benefits within 90 days after the date of repeal....

10. Paragraph 4 of subsection (a) of Section 1144 established "the first day of the first month beginning after the date of enactment" as the effective date of the subsection. The statute was enacted on August 13, 1981.

11. In response to an inquiry from counsel for Conrail concerning the existence of any efforts to claim benefits prior to this date, counsel for Mr. Mulligan stated:

> Mr. Mulligan did not file a claim and the reasons for this will be set forth in detail at the hearing if there is a hearing.

Complaint, Exhibit 10 ¶ 4.

12. *See supra* note 3.

13. Section 507 of the RRRA, 45 U.S.C. § 777 (1976), provides the exclusive means of applying for Title V benefits. *See United Transportation Union v. Conrail*, 672 F.2d 621, 624–25 (7th Cir.1982).

the claim would not have been filed within the ninety-day grace period. Thus any effort to recover Section 505 benefits is barred by the repeal of that provision contained in Section 1144 of NRSA.

█ Mr. Mulligan has offered no argument challenging this reading of NRSA's repeal provisions. Instead, Mr. Mulligan contends that all questions regarding the Section 505 claim at issue must be ruled on through the arbitration process he seeks to initiate and that Conrail has waived any right to object to the arbitration by somehow participating in that proceeding. These contentions rest on decisions addressing the scope of the New York statute Mr. Mulligan relies on in seeking this arbitration, Section 7503(c) of the Civil Practice Law.[14] However, any arguments based on that statute fail to take into account the preemptive effect of the federal NRSA statute. Under the Supremacy Clause of the Constitution, Article VI, clause 2, a federal statute will preempt state law to the extent that the state law "stands as an obstacle to the accomplishment and execu-

tion of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).[15] Application of the New York statute in this context would frustrate the achievement of the objectives noted by Congress in enacting NRSA. *See supra* note 8. To that extent, therefore, the New York statute is preempted by NRSA, and Mr. Mulligan may not rely on it to compel Conrail to arbitrate a claim that Congress has declared time-barred.

Wherefore, it is ORDERED that Christopher J. Mulligan is hereby enjoined from pursuing further arbitration proceedings in support of any Title V claim against Conrail as the Court finds that claim to be barred by the repeal of Title V contained in Section 1144 of NRSA.

**14.** Section 7503(c) of the New York Civil Practice Law states:

Notice of intention to arbitrate. A party may serve upon another party a demand for arbitration or a notice of intention to arbitrate, specifying the agreement pursuant to which arbitration is sought and the name and address of the party serving the notice, or of an officer or agent thereof if such party is an association or corporation, and stating that unless the party served applies to stay the arbitration within twenty days after such service, he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time. Such notice or demand shall be served in the same manner as a summons or by registered or certified mail, return receipt requested. An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded....

N.Y.Civ.Prac.Law § 7503(c) (McKinney 1980).

**15.** *See also Hillsborough County v. Automated Medical Laboratories, Inc.,* —— U.S. ——, ——, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985); *Michigan Canners & Freezers Association v. Agricultural Marketing & Bargaining Board,* —— U.S. ——, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984); *Jones v. Rath Packing Co.,* 430 U.S. 519, 540–43, 97 S.Ct. 1305, 1317–19, 51 L.Ed.2d 604 (1977).