612 F.Supp. 1207 (1985)
Glen D. BOETTJER, Gary A. Carpenter and United Transportation Union, by Hugh A. Cobb, General Chairman (C & OProper), Plaintiffs,
v.
CHESAPEAKE AND OHIO RAILWAY COMPANY, Defendant.
Civ. A. No. 83-5.
Special Court, Regional Rail Reorganization Act.
July 9, 1985.
*1208 Nelson G. Grills, Indianapolis, Ind., for plaintiffs Glen D. Boettjer, et al.
D. Christopher Ohly, H. Russell Smouse, Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, Md., Nicholas S. Yovanovic, Chesapeake and Ohio Ry. Co., Cleveland, Ohio, for defendant Chesapeake and Ohio Ry. Co.
Before GASCH, Presiding Judge, and BRYANT and WEINER, Judges.

MEMORANDUM
GASCH, Presiding Judge:
This is an action for declaratory, injunctive and other relief arising out of defendant Chesapeake and Ohio Railway Company's alleged violation of the Indiana Minimum Crew Law and a 1982 crew consist agreement between plaintiff The United Transportation Union and defendant. Presently before the Court are the parties' cross motions for summary judgment.

BACKGROUND
As amended in 1972, Indiana's Minimum Crew Law provides that a carrier may operate within Indiana freight trains consisting of more than 70 cars with fewer than six crew members if the Indiana Public Service Commission ("PSC") determines, after notice and hearing, that a crew of fewer than six persons is provided for by a collective bargaining agreement between the carrier and a labor organization and is adequate for safe train operations. The law further provides that train carriers shall employ six-man crews to the extent necessary to provide continued employment at the governing terminal for employees with a seniority date on or before the date of the law's 1972 amendment and for whom no other employment is available in freight train or switching service. Indiana Code § 8-9-2-10 (1972).
The crew consist agreement between the Union and the Railway, effective June 14, 1982, provides that "[t]he protection against furlough for employees protected under preexisting crew consist agreements is preserved." Prior crew agreements included the protections under the Indiana Minimum Crew Law.
In June 1982, the union filed a complaint with the Indiana PSC on behalf of its union members alleging that the Railway's discontinuance of employment of third brakemen on trains with more than 70 cars operating in Indiana violated the Indiana Minimum Crew Law and the 1982 crew consist agreement between the Union and the Railway.[1] After this action was filed, the Indiana PSC dismissed the Union's complaint with leave to refile if this Court finds that Section 711 of the Northeast Rail Service Act of 1981 does not deny the Indiana PSC authority to determine whether train crews of specific sizes must be used in Indiana.

DISCUSSION
Plaintiffs raise several constitutional challenges to Section 711 of the Regional Rail Reorganization Act of 1973 ("3R Act"), as amended by the Northeast Rail Service Act of 1981 ("NRSA"), 45 U.S.C. § 797j.[2] Plaintiffs apparently contend that *1209 Section 711 does not preempt Indiana's Minimum Crew Law, and that Section 711 deprives them of the protections of the Indiana law in violation of the tenth amendment and the due process and equal protection principles of the fifth amendment.[3] Defendant argues that Congress expressly intended to preempt state minimum crew laws such as Indiana's, that Congress validly exercised its power under the Commerce Clause in preempting state minimum crew laws, and that Section 711 does not violate plaintiffs' fifth amendment rights.
Plaintiffs' claims do not require elaborate discussion as this Court recently ruled on virtually identical claims. As to plaintiffs' preemption argument, it is well settled that "when acting within its constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms." Hillsborough County v. Automated Medical Laboratories, Inc., ___ U.S. ___, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985); see also Jones v. Rath Packing Company, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). The language of Section 711 makes it unequivocally clear that Congress expressly intended to preempt state minimum crew laws such as Indiana's. Indeed, this Court so held in Keeler v. Consolidated Rail Corporation, 582 F.Supp. 1546 (Regional Rail Reorg.Ct. 1984); see also Norfolk and Western Railway Company v. Public Utilities Commission of Ohio, 582 F.Supp. 1552 (Regional Rail Reorg.Ct.1984) (Ohio full crew law preempted by Section 711).
In Norfolk and Western Railway Company, this Court also rejected the argument that Section 711 applies only to Conrail, holding that the prohibition against state enforcement of full crew laws covers all "railroads" in the "Region." 582 F.Supp. at 1556. As defined by NRSA, "Region" includes the State of Indiana and "railroad" includes the defendant Railway. 45 U.S.C. § 702(17), (15).
Plaintiffs' due process and equal protection challenges to Section 711 are based primarily on the argument that such provision deprives non-Conrail employees of the protections under the Indiana Minimum Crew Law without providing the alternative benefits available to Conrail employees. In Norfolk and Western Railway Company, this Court rejected the same argument, finding that Section 711 is rationally related to the 3R Act's and NRSA's purpose of preserving essential rail service in the Northeast and Midwest Regions. 582 F.Supp. at 1557-58.
Plaintiffs also contend that somehow Section 711 violates the tenth amendment, apparently arguing that it is an invalid exercise of congressional power under the Commerce Clause because state-mandated minimum crews designed to ensure safe train operations are exempt from federal regulation. Plaintiffs rely principally on National League of Cities v. Usery, 426 U.S. 833, 840, 96 S.Ct. 2465, 2468, 49 L.Ed.2d 245 (1976), which established a four-part test to determine whether a state activity is immune from federal regulation under the Commerce Clause. The Supreme Court recently overruled National League of Cities in Garcia v. San Antonio Metropolitan Transit Authority, ___ U.S. ___, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which held that the defendant transit authority was not immune from the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA"). Abandoning the "traditional governmental function" test articulated in National League of Cities, the Court reasoned that the FLSA requirements were not "destructive of state sovereignty or violative of any constitutional provision." 105 S.Ct. at *1210 1020. After Garcia, the principal limit on the federal commerce power is the internal safeguards of the political process against laws unduly burdensome on states. Id.
Plaintiffs' tenth amendment challenge is without merit.[4] Section 711 does not destroy state sovereignty nor is it unconstitutional. It contravenes "no affirmative limit on Congress' power under the Commerce Clause." Id. As this Court stated in Keeler v. Consolidated Rail Corporation, 582 F.Supp. 1546, 1551 (Regional Rail Reorg. Ct.1984), the preemption provisions of NRSA and the 3R Act are reasonably related to the expressed goal of a viable Conrail and northeastern rail service.
Lastly, plaintiffs claim that Section 711 does not render invalid the minimum crew provisions in the 1982 crew consist agreement between the Union and the Railway. Congress has the power to invalidate existing private contracts which interfere with its exercise of constitutional authority. Norman v. Baltimore & Ohio Railroad Company, 294 U.S. 240, 306-09, 55 S.Ct. 407, 415-17, 79 L.Ed. 885 (1935); Railway Labor Executives' Association v. United States, 575 F.Supp. 1554, 1559 (Regional Rail Reorg.Ct.1983); see generally United Transportation Union v. Consolidated Rail Corporation, 535 F.Supp. 697, 706-07 (Regional Rail Reorg.Ct.1982). Neither the plain language of Section 711 nor its legislative history, however, evidences any Congressional intent to extend that provision to private agreements applicable to non-Conrail employees such as the collective bargaining agreement between the Union and the Railway.[5]
This case is readily distinguishable from Railway Labor Executives' Association v. United States, 575 F.Supp. 1554 (Regional Rail Reorg.Ct.1983), in which the plaintiffs claimed that a contract between Conrail and a union incorporated certain employee protections of Title V of the 3R Act and that the protections remained binding on Conrail even after Congress repealed Title V. The Court held that even assuming the collective bargaining agreement did in fact incorporate Title V's labor protection provisions, the provisions were superseded by Congress' subsequent repeal of Title V, and thus Conrail's refusal to pay benefits under the repealed provisions did not violate the collective bargaining agreement or the Railway Labor Act. In that case, the legislative history evidenced Congress' intent to preempt any inconsistent collective bargaining agreement. 575 F.Supp. at 1559. In the instant case, the intent to have Section 711 override inconsistent private contracts involving non-Conrail employees is missing.[6]
The collective bargaining agreement between the Union and the Railway included minimum crew protections available under the Indiana Minimum Crew Law. Thus the question remains whether as a matter of contract law the minimum crew protections in the collective bargaining agreement remain viable. See Railway Labor Executives' Association v. Grand Trunk Western Railroad Company, 594 F.Supp. 758, 761 (Regional Rail Reorg.Ct.1984). The parties proposed at oral argument, and the Court agrees, that this question should be submitted for resolution to the National Railroad Adjustment Board.

*1211 CONCLUSION
Preemption of Indiana's Minimum Crew Law under Section 711 of the 3R Act, as amended, is constitutional under the fifth and tenth amendments. As Section 711 was not intended to extend to private collective bargaining agreements governing non-Conrail employees, the question of whether the minimum crew protections of the crew consist agreement between the Union and Railway remains valid as a matter of contract law should be submitted to the National Railroad Adjustment Board.
NOTES
[1] The individual plaintiffs Glen Boettjer and Gary Carpenter, who are members of the Union, were employed as brakemen by the Railway prior to 1972 but were furloughed before this suit was filed in February 1983.
[2] Section 711 provides:

§ 797j Preemption
No State may adopt or continue in force any law, rule, regulation, order, or standard requiring the Corporation, the National Railroad Passenger Service Corporation, or the Amtrak Commuter Services Corporation to employ any specified number of persons to perform any particular task, function, or operation, or requiring the Corporation to pay protective benefits to employees, and no State in the Region may adopt or continue in force any such law, rule, regulation, order, or standard with respect to any railroad in the Region.
[3] Plaintiffs apparently have dropped their claim that Section 711 violates the ninth amendment.
[4] At oral argument, plaintiffs' counsel seemed to concede his tenth amendment claim in view of the Garcia decision.
[5] Section 708 of the 3R Act, 45 U.S.C. § 797g, which applies only to collective bargaining agreements between Conrail and its employees, expressly prohibits such agreements from including any job stabilization provisions that are inconsistent with those established under the Act.
[6] See also United Transportation Union v. Consolidated Rail Corporation, 535 F.Supp. 697 (Regional Rail Reorg.Ct.1982), which held that a crew consist agreement between Conrail and UTU regarding overmanning was superseded by Section 702 of the 3R Act, as amended. Significantly, the Court did not rely on Section 711, noting only that Section 711 insures that elimination of brakemen by Conrail would not run afoul of state full crew laws. 535 F.Supp. at 704.